EMILY V. SHAW, JOSEPH H. SHAW, and ALICE B. SHAW, use of EDWIN R. WORTH, *vs*. GENERAL CHEMICAL COMPANY, a corporation existing under the laws of the State of New York.

1. EVIDENCE—PHYSICAL IMPOSSIBILITY OF MAKING EXCAVATION WITHOUT DISTURBING PERCOLATING WATER OR OF RESTORING FLOW TO ITS ORIGINAL CHANNEL ASSUMED AS MATTER OF COMMON KNOWLEDGE.

In considering covenant, by grantee of easement for sewer and water pipe, to restore the property to its previous condition as near as possible, it will be assumed, as matter within common knowledge, that it is a physical impossibility to make excavation without disturbing the flow of percolating water, or to replace the soil in such way as to restore the flow to its original channel.

2.  EASEMENTS—GRANTEE'S COVENANT TO RESTORE PROPERTY TO PREVIOUS
    CONDITION DOES NOT REQUIRE IMPOSSIBLE RESTORATION OF FLOW OF
    PERCOLATING WATER.

Covenant, by grantee of easement for sewer and water pipe, to restore the property to its previous condition as near as possible, did not require it to do the physically impossible thing of restoring the land where the trench was dug to such condition that subterranean waters would percolate exactly as before.

3.  EASEMENTS—DAMAGE TO SPRING FROM INTERFERENCE WITH PERCOLAT-
    ING WATERS HELD NOT, AS MATTER OF LAW, OUTSIDE COVENANT TO
    SAVE GRANTORS HARMLESS.

Damage to spring from diversion of flow of percolating waters was not as matter of law outside scope of covenant, by grantee of easement for sewer and water pipe, to save the grantor harmless from all loss or damage from the laying of the pipe.

4.  COVENANTS—GENERAL LANGUAGE NOT EXTENDED TO INJURY SHOWN
    BY WHOLE CONTRACT NOT TO BE INTENDED.

When it appears from contract as a whole that language of covenant therein was not intended to cover particular injury, it will be construed in conformity with such intention, though such injury is within general language of covenant.

(*November* 16, 1922.)

RICE and RODNEY, J. J., sitting.

*William S. Hilles* for plaintiffs.

*Herbert H. Ward* (of Ward, Gray & Neary) for defendant.

Superior Court for New Castle County, May Term, 1922. DEMURRER, No. 144, March Term, 1921.

Action of covenant based upon an alleged breach of contract entered into between *Emily V. Shaw, et al.*, grantors of Edwin H. Worth, the use plaintiff, and *General Chemical Company*, the defendant.

The parties of the first part granted and conveyed to the defendant company an easement to enter upon a strip of their land 15 feet wide and to construct and maintain thereon a sewer and water pipe. Together with other things it was covenanted:

Fifth. "That the said parties of the first part shall be defended, and saved harmless and free, and discharged from any and all damages, injuries, suits, actions or other proceedings in law or equity by reason of the laying, building, erecting or constructing said sewer and water pipe, and from all loss or damages ensuing therefrom either in the present, or at any time in the future, by

reason of the maintenance or continuance thereof, unless caused by the willful act or neglect of the parties of the first part."

Sixth. "That the said party of the second part, at its own expense and cost, immediately after the construction, renewal or repair of said sewer, shall restore as near as possible to their then before existing condition any land, buildings or property of the said parties of the first part on the line of said trench, provided any change from the present condition as aforesaid is caused directly or indirectly by the building, constructing or laying of said sewer or water pipe."

Eighth. "This agreement and the covenants shall run with the herein-before described strip of land fifteen (15) feet wide, and be binding upon the heirs, successors and assigns of the parties hereto."

The narr. consists of two counts. In the first count, the plaintiff alleges that the defendant in digging the trench for the construction of the sewer totally destroyed a spring on plaintiff's land by diverting the water supply, which spring had for a long time furnished ample supply of water necessarily used for the lands, premises and buildings, and that the defendant failed to comply with its covenant to restore the spring to the condition in which it was at the time of the making of the agreement.

The second count is similar to the first, and alleges that the defendant has failed to save plaintiff harmless and has failed to free and discharge the plaintiff from any and all damages and injuries by reason of building or constructing said sewer and water pipe.

The defendant demurred to both counts.

RICE, J., delivering the opinion of the court:

The defendant claims that there were no legal obligations on its part to restore the ground to such condition that the percolating waters would flow through to the spring, and that any injury to the spring was the natural result of the exercise of its contractual right to dig the trench and construct and maintain the sewer, etc. Counsel for the defendant in support of the demurrer argues:

(1) That the grant vests in the defendant a dominant tenure, and its right to dig the trench was the same as the right of an adjacent property owner to dig a like trench on the owner's land; that the owner of land adjacent to the land of another upon which there is a spring has the right to dig upon his land for any lawful purpose

32 Del.]     Shaw et al. vs. Gen. Chemical Co.     175

Opinion.

without malice or willful intent to injure his neighbor, even though such digging or other use interferes with, or cuts off, percolating water, or water flowing in an unknown subterranean channel to his neighbor's spring.

(2) That it is a physical impossibility to prevent or guard against the diversion or the interference with water percolating through the soil where an excavation is made, and a physical impossibility thereafter to restore the percolating water to its original direction of flow.

(3) Where one from whom the general owner derives title of land has also granted rights in the same tract of land to other persons, and the necessary operations of the persons to whom such special rights have been granted interferes with percolating water supplying the spring of the general owner, the general owner cannot recover damages therefor.

The principles of law stated by the defendant are generally recognized in this country, and, while it is proper to consider them in construing the contract in question, yet they would not be looked upon as controlling if the parties have contracted in contravention of those principles.

[1,2] In considering the first count, and in connection therewith the sixth covenant on which it is based, it will be assumed as a matter within common knowledge that in making an excavation in ground through which subterranean water percolates, it is a physical impossibility to do so without disturbing the flow of such water, and it must also be accepted as a fact that it is physically impossible to replace the soil in such a way as to restore the flow of such water to its original channel. A contract will not be construed to bind one of the parties thereto to do a thing physically impossible of performance unless the language of the contract should be so exacting as to permit of no other reasonable construction. We are of the opinion that in the present contract it does not appear that the defendant agreed to do the physically impossible thing of restoring the land where the trench was dug to such condition that the subterranean waters would percolate exactly as before the trench was dug. The defendant was only required

by the expressed terms of the contract "to restore as near as possible to their before existing condition any land, buildings, or property of the owner on the line of said trench," and it must be assumed that in using the word "possible" the parties to the contract did not understand it to include that which was physically impossible, and could have understood it to include only the practical and possible things, in view of the purpose for which the land was to be used by the defendant.

[3,4] In the second count, which is based on the fifth covenant, the defendant asks the court to find as a question of law that under the contract the defendant was not liable to the plaintiff for damages to plaintiff's spring resulting from the digging of the trench by the defendant and the construction of the sewer.

We are of the opinion that we cannot so determine the question. We understand the defendant does not contend that the language of the fifth covenant is not broad enough to cover the injury alleged, but claims that it appears from the contract as a whole that the injury as alleged to the spring is not included in the indemnity for which provision was made in the fifth covenant. We fail to find anything in the contract which would lead us to such a conclusion. It is true the former owner granted the defendant an easement, with the right to dig a trench, and, if it were not for the fifth covenant, the defendant would not be liable for any injury as alleged resulting from a reasonable and natural use of the grant, but it is equally true that in the fifth covenant the defendant promised to save the landowner harmless and free from injury resulting from the use of the grant then or in the future, and the language of the covenant is clearly sufficiently general to cover the injury alleged, and, as the general language of the covenant is broad enough to cover an injury for which damages are claimed, it will not be presumed as a matter of law that it does not. Of course, where it appears from the contract as a whole that the general language of a covenant was not intended to cover the injury complained of, the contract would be construed in conformity with such intention. However, in our opinion, it does not appear from the language of the contract, or by reason of the object of the

contract that the defendant intended its liability to be other than that expressed in the general language of the covenant. In the present case, the very injury complained of may have been one of the things intended by the parties to be covered by the general indemnity provided for in the fifth covenant. We think it not inconsistent for a landowner to grant an easement over his land to another and at the time not being able to determine just what injuries may happen to his adjoining land by the use of the grant, to generally indemnify himself from injury resulting therefrom. The defendant contends that the landowner should have protected himself in the contract from the injury complained of by express terms in the contract, but can it be said that the landowner had reason to know and believe that the use of the grant would divert the water from his spring or adjoining land? If the grantee of the easement, the promisor in the covenant, had any question about its liability under the fifth covenant, it could have protected itself by setting forth the injuries for which it would be liable or excepting the things for which it would not be liable, or, at least, could have restricted its liability by the use of less general language in the covenant.

For the reasons stated, the demurrer to the first count is sustained, and overruled as to the second.